## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

TUSKEGEE UNIVERSITY,

     Plaintiff,

v.                                                                     Case No.:

AMERICAN VETERINARY                         **JURY TRIAL DEMANDED**
MEDICAL ASSOCIATION,

     Defendant.

## COMPLAINT

Thomas W. Thagard III                H. William Bloom III
James C. Lester                      MAYNARD NEXSEN PC
S. Reeves Jordan                     770 Washington Avenue
William B. Grimes                    RSA Plaza, Suite 421
MAYNARD NEXSEN PC                    Montgomery, AL 36104
1901 Sixth Avenue North              T: (334) 262-2001
Suite 1700                           wbloom@maynardnexsen.com
Birmingham, AL 35203
T: (205) 254-1000
tthagard@maynardnexsen.com
jlester@maynardnexsen.com
rejordan@maynardnexsen.com
bgrimes@maynardnexsen.com

*Counsel for Plaintiff Tuskegee University*

## INTRODUCTION

1.     "At its core, the right to due process reflects a fundamental value in our American constitutional system." *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971).

2.     This case is about the denial of that "fundamental value" to one of the most storied institutions of higher education in the nation.

3.     Plaintiff Tuskegee University ("Tuskegee") began operating its College of Veterinary Medicine eighty years ago.

4.     There are about 127,000 veterinarians in the United States. Only 2% of that number are Black. Of that 2%, 70% are graduates of Tuskegee.

5.     The American Veterinary Medical Association ("AVMA") is now set to shut down Tuskegee's historic veterinary program following a two-hour appellate façade on December 5, 2025.

6.     The AVMA's accreditation arm, the AVMA Council on Education ("AVMA COE"), recently made an error-plagued decision to place Tuskegee on terminal accreditation status, despite not having conducted a site visit of Tuskegee since 2021.

7.     Tuskegee has appealed that decision to an internal appeals panel of the AVMA, as the AVMA COE's policies and procedures (the "Policies") allow. The Policies are attached to this Complaint as Exhibit 1.

8.     According to the Policies, the AVMA COE must apply its Accreditation Standards ("Standards") "consistently and fairly to all colleges seeking accreditation." AVMA COE, *Policies* § 1.6.1.

9.     Tuskegee has strong evidence that the AVMA COE strayed from its stated Policies that promise equality when rendering its terminal accreditation decision. The AVMA's recent communications to Tuskegee, however, make clear that the AVMA's appeals panel is set to rubberstamp the AVMA COE's decision without allowing Tuskegee the opportunity to present this evidence at the panel's December 5, 2025 hearing.

10.    For instance, Tuskegee would offer the testimony of Dr. James Lloyd and Dr. Willie Reed, two former deans of colleges of veterinary medicine, who would testify that the AVMA COE has treated Tuskegee differently than *all* other colleges of veterinary medicine that they have been associated with over their decades of experience at the highest levels of veterinary education.

11.    The AVMA has arbitrarily refused to allow Tuskegee to present Dr. Lloyd's and Dr. Reed's proffered testimony, and the AVMA will prohibit its appeals panel from reviewing a previously submitted affidavit from Dr. Lloyd.

12.    This is not the only instance of the AVMA violating the Policies in its review of Tuskegee's appeal.

2

13.    The Policies grant colleges "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4.

14.    In violation of the Policies, the AVMA has categorically barred both "extensive" fact testimony and all expert testimony, calling it unnecessary.

15.    Next, the Policies entitle Tuskegee to present evidence that is "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." AVMA COE, *Policies* § 2.5.4.

16.    Tuskegee planned to present evidence regarding the AVMA COE's deficient process and procedure with respect to three Standards in which the AVMA COE wrongfully found that Tuskegee was lacking.

17.    For example, Dr. Lloyd would testify that Tuskegee's financial statements, evidence of financial surety, and express commitments of unrestricted support from Tuskegee University, the University President, the University Board of Trustees, and a major financial institution provided adequate financial assurances that satisfy all accreditation Standards. The AVMA COE's process in rejecting this evidence violated the Policies.

18.    For the appeal, the AVMA has abandoned the plain language of the Policies and refuses to consider Dr. Lloyd's testimony, calling it "new evidence."

19.    That arbitrary conclusion defies logic because it would have been impossible for Tuskegee to produce evidence challenging the process and procedure the AVMA COE used to arrive at its decision *before* it made its decision.

20.    Even though the Policies plainly permit such evidence, the AVMA informed Tuskegee that it will not allow Tuskegee to present that evidence or testimony, stacking the deck in favor of affirming the AVMA COE's erroneous determination.

21.    Moreover, despite the Policies' express allowance for a college to make a case about the AVMA COE's process and procedure, the AVMA has stonewalled every good-faith attempt on the part of Tuskegee to obtain information about the AVMA COE's process and procedure actually employed by the AVMA COE in arriving at its decision.

22.    After the AVMA COE reached its accreditation decision, Tuskegee requested documents related to the process and procedure used to arrive at the AVMA COE's decision.

23.    Initially, the AVMA and the AVMA COE ignored these requests.

24.    After multiple attempts on the part of Tuskegee to obtain the information, the AVMA COE openly admitted that it had the information Tuskegee sought, but refused to produce it because it was "confidential, *inter alia*."

25.    The AVMA COE is not a governmental body, is not entitled to deliberative-process privilege, and gave absolutely no explanation for the "*inter alia*" that supposedly protects the information about its process and procedure.

26.    The fact that the AVMA COE has access to such information and materials but refuses to produce them violates the Policies. And the AVMA's allowance of such tactics by its internal accreditation arm violates due process.

27.    In addition, the Policies impose no limitation on the number of relevant documents or witnesses a college may offer to support its case on appeal.

28.    Nonetheless, the AVMA again imposed a capricious restriction that violated the Policies by arbitrarily limiting Tuskegee's entire case on appeal to just over two hours -- a total of two hours to challenge a four-year accreditation review.

29.    It is nothing less than shocking and outrageous that an accrediting agency will decide whether to ruin Tuskegee's historic veterinary program that has operated for nearly a century after a two-hour presentation. Again, the AVMA COE's accreditation review leading up to its terminal accreditation decision lasted four years—yet Tuskegee has been given two hours to explain the substantial errors that occurred during that entire four-year accreditation review.

30.    "It is axiomatic that an accrediting agency's failure to follow its own rules constitutes a violation of due process." *Bennett Coll. v. S. Ass'n of Colls. & Sch. Comm'n on Colls., Inc.*, 474 F. Supp. 3d 1297, 1307 (N.D. Ga. 2020).

31.    Each of the AVMA's violations of its own Policies constitutes a due process violation.

32.    And in the aggregate, the AVMA's multiple violations of its Policies illustrate a callous disregard for Tuskegee's right to due process and Tuskegee's continued existence as a veterinary college.

33.    In this civil action, Tuskegee seeks injunctive relief to ensure that it will receive the due process to which it is entitled in its appeal of the AVMA COE's momentous decision to terminate Tuskegee's accreditation.

## PARTIES

34.    Tuskegee is a private university that is incorporated and has its principal place of business in Alabama. Tuskegee's principal place of business and headquarters is 1200 West Montgomery Road, Tuskegee, Alabama 36088.

35.    The AVMA is an Illinois not-for-profit corporation operating as a national trade association whose membership is open to all veterinarians. The AVMA's principal place of business and headquarters is 1931 North Meacham Road, Suite 100, Schaumburg, Illinois 60173.

36.    Through its internal arm, the AVMA COE, the AVMA establishes standards for the accreditation of veterinary schools. The AVMA COE is recognized by the U.S. Secretary of Education as an agency responsible for the accreditation of veterinary schools, which confer Doctor of Veterinary Medicine ("DVM") degrees.

The Secretary of Education sets general standards to be followed by recognized accrediting agencies, but it does not approve the AVMA COE's specific accreditation procedures or the application of those procedures.

## JURISDICTION AND VENUE

37.    This civil action arises under section 1099b of the Higher Education Act and the federal common law. *See* 20 U.S.C. § 1099b(f).

38.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331. *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013) (ruling that an allegation of a breach of the federal common law gave the district court subject matter jurisdiction under 28 U.S.C. § 1331); 19 Wright & Miller's Federal Practice and Procedure § 4514 (3d ed. 2025) ("A case 'arising under' federal common law presents a federal question and as such is within the original subject matter jurisdiction of the federal courts.").

39.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events, acts, or omissions giving rise" to this action occurred in this District.

40.    This Court has personal jurisdiction over the AVMA because its conduct falls under Alabama's long-arm statute and the AVMA has "minimum contacts" with Alabama because (1) Tuskegee's "claims 'arise out of or relate to' [the AVMA's] contacts with the forum state; (2) the [AVMA] 'purposefully availed'

7

itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1341 (11th Cir. 2025) (citation modified).

## FACTUAL ALLEGATIONS

### A.   Tuskegee is a historic veterinary program.

41.     Tuskegee has a distinguished eighty-year record as the only historically Black college of veterinary medicine.

42.     Tuskegee's College of Veterinary Medicine was founded by Dr. Frederick Douglass Patterson in 1945, during the segregation era. Dr. Patterson's leadership won him national recognition and earned him an invitation to serve on President Harry S. Truman's Commission on Higher Education from 1946–47. Dr. Patterson later received the Presidential Medal of Freedom from President Ronald Reagan, in recognition of his lifetime of leadership and success in the educational field.

43.     Less than ten years after matriculating its first class of students, Tuskegee obtained full accreditation from the AVMA COE in May 1954 and has operated continuously since that time. As stated above, only 2% of veterinarians in the United States are Black, and of that 2%, 70% are graduates of Tuskegee.

**B.**   **The AVMA has exclusive control over the accreditation of veterinary medicine programs in the United States.**

44.   The AVMA is a trade association representing over 100,000 veterinarians. On the homepage of the "Advocacy" section of its website, the AVMA describes itself as the "nation's leading representative of the veterinary profession." AVMA, *AVMA Advocacy*, https://www.avma.org/advocacy (last visited Nov. 1, 2025).

45.   Through the AVMA COE, the AVMA maintains exclusive control over the accreditation of veterinary schools in the United States. The AVMA COE is currently the only accrediting authority for DVM programs in the United States. AVMA COE, *Policies* § 1.2.2.

46.   The AVMA COE received this authority from the Department of Education pursuant to 20 U.S.C. § 1099b.

47.   If a school lacks AVMA COE accreditation, its students cannot obtain federal funding for student loans to defray the cost of attendance. AVMA COE, *Policies* § 1.1.

**C.**   **The AVMA COE's decision to assign terminal accreditation status to Tuskegee threatens to halt its many decades of success.**

48.   Recently, the AVMA COE gravely erred by assigning a status of terminal accreditation to Tuskegee for an alleged lack of compliance with certain aspects of the AVMA COE's Policies.

49.    The Policies include eleven Standards with which accredited institutions must comply.

50.    The AVMA COE erroneously found that Tuskegee had deficiencies in three of those Standards—Standards 2 (Finances), 4 (Clinical Resources), and 11 (Outcomes).

51.    Although this civil action does not seek an adjudication of Tuskegee's substantive appeal to the AVMA, it is necessary to understand the context of Tuskegee's appeal to understand the deprivation of due process at issue here.

52.    A May 22, 2025 letter from the AVMA COE purported to comprehensively explain its determination that Tuskegee did not achieve satisfactory compliance with the Standards, but the AVMA COE's decision ignored overwhelming evidence demonstrating Tuskegee's compliance with its directives.

53.    When examined thoroughly and completely, the evidence shows that:

a.    with respect to Standard 2, Tuskegee has adequate financial resources to timely complete new clinical facilities and to comply with all other accreditation requirements of the AVMA COE;

b.    with respect to Standard 4, Tuskegee clinical caseloads and faculty are sufficient to meet the educational goals of the program and provide its students with the necessary instruction and clinical competencies; and

c.    with respect to Standard 11, Tuskegee has demonstrated recent success in raising its NAVLE passage rates (success the AVMA COE inexplicably refused to consider in its determination), such that a good cause extension is warranted under the AVMA COE's own Policies.

54.    As relevant here, and by way of example, with respect to Standard 2, in placing Tuskegee on terminal accreditation, the AVMA COE concluded that "the availability of sufficient funds for timely completion [of a new teaching hospital] remains unclear."

55.    This conclusion ignored three separate occasions where Tuskegee provided written assurance of its unrestricted financial commitment: on March 6, 2024, from the Chair of the University's Board of Trustees; on August 21, 2024, from University President Mark A. Brown; and on April 27, 2025, from the University's Chief Financial Officer.

56.    For purpose of the instant civil action, Tuskegee challenges the process by which the AVMA COE either failed to consider this evidence or failed to give this evidence any credence due to an unwillingness to trust the University's leaders, neither of which is acceptable or consistent with the Policies.

57.    Tuskegee intends to submit testimony from Dr. James Lloyd and Dr. Willie Reed that neither has ever witnessed another college's financial data be

challenged, ignored, or distrusted in such a manner as Tuskegee's data has been by the AVMA COE.

58.    Dr. Reed will testify that, during his tenure as Dean of Purdue University College of Veterinary Medicine, the college was placed on probationary accreditation due to the need to replace its old and outdated hospital.

59.    The AVMA COE never asked Purdue University for financial statements to support its ability to fund this $108 million dollar project. Purdue University simply moved forward with construction—using the same design firm as Tuskegee—and obtained an extension to its probationary status to complete the project.

60.    Relatedly, part of the process by which the AVMA COE reached its accreditation determination is its evaluation of how much weight to afford certain data provided by Tuskegee.

61.    For instance, the AVMA COE plainly addressed Tuskegee's financial data with skepticism and distrust, although it did not take the same approach with regard to other institutions.

62.    Therefore, an assessment of the sufficiency of Tuskegee's financial data as compared with what the AVMA COE has required of other colleges of veterinary medicine ("CVMs") is part of the AVMA COE's decision making process.

63.    On this point, Tuskegee intends to submit testimony from Dr. Lloyd that the financial statements, evidence of financial surety, and express commitments of unrestricted support from Tuskegee University, the University President, the University Board of Trustees, and a major financial institution provide adequate financial assurances that satisfy all accreditation Standards and demonstrate sufficient resources to attract and retain clinical faculty with a wide array of expertise, to replace and refurbish clinical facilities, to build a new teaching hospital, and to confidently operate Tuskegee.

64.    And in that way, Dr. Lloyd intends to testify that the AVMA COE has treated Tuskegee differently than it has all other CVMs with which Dr. Lloyd has been associated with over his thirty-seven-year career.

65.    With respect to Standard 4, and as another example, in placing Tuskegee on terminal accreditation status, the AVMA COE reached conclusions about Tuskegee's integration of adjunct faculty into clinical education.

66.    Tuskegee reported that its Interim Dean was working strategically with clinical units to integrate both current and new adjunct faculty into the clinical teaching program. The AVMA COE simply rejected this statement by Tuskegee despite not having conducted a site visit of Tuskegee since 2021.

67.    Tuskegee has challenged the process by which the AVMA COE reached a conclusion about faculty integration into clinical education without having

undertaken any actual review of the measures implemented by Tuskegee to date regarding its faculty integration.

**D.    The AVMA has failed to afford Tuskegee the due process it is entitled to under the law.**

68.    The Policies provide the following grounds for appeal: "In the event of an adverse decision by the COE, the affected college may appeal the decision on the grounds that the Council: 1) ruled erroneously by disregarding established AVMA COE criteria for accreditation, 2) materially failed to follow its stated procedures, or 3) failed to consider all the evidence and documentation presented." AVMA COE, *Policies* § 2.5.4.

69.    The college is entitled to a hearing, at which "an officer or other representative of the appellant college and a member of the Council on Education shall have the right to present witnesses and to submit documents and other written materials pertinent to the case." *Id.*

70.    The hearing may include: "(1) the adverse accreditation or reasonable assurance decision, (2) a review of information before the Council at the time of the decision, (3) a review of the process and procedure used to arrive at the decision, and (4) testimony relevant to (1), (2) and/or (3), depending on the basis of the appeal." *Id.*

71.    On September 12, 2025, Tuskegee submitted its appellate submission to the AVMA appeals panel. Included in that submission, Tuskegee requested

discovery from the AVMA COE related to the process and procedure used by the AVMA COE to arrive at its terminal accreditation decision.

72.    On September 15, the AVMA, through counsel, informed Tuskegee that the appeal hearing would be held on December 5, 2025. Exhibit 2 at 1.

73.    The September 15 letter also included as an attachment the Procedures for Appeal of Adverse Outcome for Tuskegee's appeal. *Id.* at 3–5.

74.    On September 19, Tuskegee objected to the AVMA's appeal procedures because they were inconsistent with the Policies. Exhibit 3.

75.    Those objections related to:

a.    The arbitrary decision to limit Tuskegee's presentation to two hours even though the Policies contain no such limitation.

b.    The arbitrary implication that the record could not be expanded beyond Tuskegee's appellate submission.

c.    A standard of review inconsistent with the Policies, which required Tuskegee to establish that the AVMA COE's decision was plainly wrong or without evidence rather than the three grounds for appeal set forth in the Policies.

d.    The ability of the AVMA appeals panel's *counsel* to ask questions of Tuskegee's witnesses.

e.  Further, Tuskegee reiterated its request for discovery about the process and procedure the AVMA COE used to reach its adverse accreditation decision.

76.  On September 22, the AVMA COE's counsel responded by doubling down on its own Policies violations. Exhibit 4.

a.  The AVMA COE stated that "evidence outside of the record that was not before the [AVMA COE] at the time of its decision should not be considered." *Id.* at 2.

i.  That limitation conflicts with the Policies' allowance of evidence relevant to the process and procedure by which the AVMA COE reached its accreditation determination <u>separate and apart</u> from "a review of information before the Council at the time of the decision." *See* AVMA COE, *Policies* § 2.5.4.

b.  Incredibly, the AVMA COE then took the position that Tuskegee would need to show that the AVMA COE's decision was arbitrary and unreasonable or an abuse of discretion—again, a standard of review that differs from the Policies' three grounds for appeal set forth above.

c.  The AVMA COE dismissively told Tuskegee that its desire to present its entire case was unnecessary.

16

    d.    The AVMA COE stated that Tuskegee was fortunate to have two hours, and that the AVMA could (in its arbitrary discretion) have chosen to afford even less time.

    e.    The AVMA COE decreed that Tuskegee's proffered expert witnesses would be barred from testifying.

    f.    The AVMA COE contemptuously declared Tuskegee's discovery requests that are necessary to defend its program to be "improper" and "harass[ment]." *Id.* at 5. The AVMA COE acknowledged that it possessed relevant documents regarding the process and procedure utilized to reach its adverse accreditation decision, but it brazenly stated that it would not produce those documents because they were "confidential, *inter alia*." *Id.*

        i.    The AVMA COE gave no justification for its refusal, nor did it attempt to explain the "*inter alia*." *Id.*

77.    On September 24, the AVMA responded to Tuskegee's September 19 letter, essentially accepting all positions from the AVMA COE's September 22 letter. Exhibit 5.

78.    On September 29, Tuskegee responded to the AVMA COE's September 22 and AVMA's September 24 letters. Exhibit 6.

a.   Tuskegee objected to the AVMA applying a standard of review that differed from the three stated grounds for appeal found in the Policies. Tuskegee continued to object to the AVMA applying a more stringent standard than the Policies allow.

b.   Tuskegee objected to the AVMA's arbitrary two-hour limitation of its case in the light of the Policies' allowance for colleges to present witnesses at an appeals hearing.

c.   Tuskegee objected to the AVMA's blanket prohibition on expert testimony because that limitation is contrary to the Policies.

d.   Tuskegee objected to the AVMA COE's refusal to produce documents it admits it has in its possession concerning the process and procedure by which the AVMA COE reached its accreditation decision. And Tuskegee further objected to the AVMA's refusal to require the AVMA COE to produce this information.

e.   Tuskegee noted that the AVMA COE's refusal to produce documents was especially concerning given the Department of Education's recent finding that the AVMA COE failed to meet regulatory requirements concerning the appeals process.

79.    On October 10, Tuskegee asked counsel for the AVMA appeals panel to clarify the panel's position on Tuskegee's objections and to identify all members

of the panel as well as produce a copy of each panel members' CV (so Tuskegee could assess for potential bias). Exhibit 7.

80.    On October 20, counsel for the AVMA appeals panel responded in substance to Tuskegee's objections and attached a new Procedures for Appeal of Adverse Outcome document. Exhibits 8 & 9.

    a.    That document finally acknowledged that the governing standard of review previously provided to Tuskegee was contrary to the Policies.

    b.    The AVMA categorically barred Tuskegee from presenting expert witness testimony at the appeals hearing.

    c.    The AVMA refused to produce any relevant information that Tuskegee requested about the process and procedure used to reach the AVMA COE's accreditation determination, instead limiting Tuskegee's appeal to "evidence before the Council at the time of its decision." Exhibit 8 at 6.

        i.    In doing so, the AVMA continued in its refusal to acknowledge the Policies' plain language that the appeals hearing may include "a review of information before the Council at the time of the decision" *and* "a review of the process and procedure used to arrive at the decision." AVMA COE, *Policies* § 2.5.4.

ii.   That decision, prohibiting Tuskegee from presenting evidence contemplated by the Policies, solidified the impending appeals proceeding as nothing more than a sham.

d.  The AVMA refused to provide CV's of the panel members, hiding behind an undisclosed "conflict of interest" form completed by the panel members and unilaterally evaluated by the AVMA, despite the fact that the Policies provide Tuskegee the opportunity to challenge panel members for bias.

81.    As the above discussion illustrates, time and time again the AVMA has improperly and arbitrarily opted to deviate from its Policies in Tuskegee's appeal of the AVMA COE's adverse accreditation decision.

82.    That departure precludes Tuskegee's right to a "open, fair and deliberative" appeals process in at least four respects. *Auburn Univ. v. S. Ass'n of Colls. & Sch., Inc.*, 489 F. Supp. 2d 1362, 1374 (N.D. Ga. 2002).

Departure #1: The AVMA excludes Tuskegee's evidence of disparate treatment.

83.    The Policies entitle Tuskegee to "consistent[] and fair[]" treatment by the AVMA COE. AVMA COE, *Policies* § 1.6.1.

84.    The Policies further grant Tuskegee "[a]t any hearing . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." *Id.* § 2.5.4.

85.     Contrary to the Policies, the AVMA has made the decision to prohibit testimony from Tuskegee's witnesses who would testify as to how the AVMA COE disparately held Tuskegee to a more difficult standard than any other veterinary college.

86.     For example, as noted *supra*, Dr. Reed would testify that during his tenure as Dean of Purdue University College of Veterinary Medicine, that college was placed on probationary accreditation due to the need to replace its old and outdated hospital.

87.     Yet, the AVMA COE never asked Purdue University for financial statements to support its ability to fund this project. Purdue University simply moved forward with construction and obtained an extension to its probationary status to complete the project.

88.     On the other hand, even though Tuskegee has received express commitments of unlimited support from Tuskegee University, the University President, the University Board of Trustees, and a major financial institution, the AVMA COE treated those commitments (and other data showing Tuskegee's sound financial position) with distrust it did not show to Purdue or other institutions.

89.     Dr. Lloyd would also testify that the AVMA COE repeatedly demonstrated a lack of willingness to work with Tuskegee in good faith.

90.    This evidence and testimony is "relevant to" "the process and procedure" the AVMA COE used "to arrive at the [accreditation] decision." AVMA COE, *Policies* § 2.5.4(3) and (4).

91.    The AVMA is prohibiting Tuskegee from offering "extensive fact witness testimony" and all "expert testimony" at the appeals hearing. Exhibit 8 at 6.

92.    The AVMA's rationale for that prohibition is that the testimony "was not evidence before the [AVMA COE] at the time of its decision." *Id.* (quotation marks omitted).

93.    Assuming *arguendo* that the AVMA's statement is correct, it still ignores the Policies' plain language that an appeals hearing may include "a review of information before the Council at the time of the decision" *and* "a review of the process and procedure used to arrive at the decision." AVMA COE, *Policies* § 2.5.4.

94.    The AVMA's refusal to abide by the Policies violates Tuskegee's right to due process.

Departure #2: The AVMA limits Tuskegee's evidence to the AVMA COE's record and disallows evidence relating to the AVMA COE's process and procedure.

95.    The Policies grant Tuskegee "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4.

96.    The Policies also allow evidence "relevant to" "the process and procedure used to arrive at the [accreditation] decision." *Id.* § 2.5.4(3) and (4).

97.    However, in addition to its blanket prohibition on expert testimony, the AVMA has rejected the admission of any evidence at the appeals hearing that was not before the AVMA COE at the time of its adverse accreditation decision.

98.    Similar to its position on expert testimony, this position by the AVMA also ignores the Policies' plain language that allows a college to introduce evidence at the hearing "relevant to" "the process and procedure used to arrive at the [accreditation] decision" *in addition to* evidence that was before the AVMA COE at the time of its adverse accreditation decision. *Id.*

99.    Here, for example, Tuskegee intends to introduce its complete financial statements to provide further corroboration that the financial data previously submitted to the AVMA COE proved Tuskegee's robust financial status. This evidence will show that the AVMA COE's process leading to distrust of Tuskegee's financial data was entirely unwarranted and demonstrated a failure to properly credit the data that Tuskegee did present to the AVMA COE, which was substantial.

100.    Moreover, Tuskegee would offer substantial factual testimony concerning its efforts before the adverse accreditation decision to integrate both current and new adjunct faculty into its clinical teaching program. Tuskegee informed the AMVA COE of these efforts, but the AVMA COE simply rejected this

statement as lacking credibility. The underlying substance of Tuskegee's extensive factual testimony in this regard may not have been before the AVMA COE at the time of its decision because the AVMA COE has not been on site to Tuskegee since 2021. But such testimony is certainly relevant to the AVMA COE's process for rejecting these statements by Tuskegee.

101.   What's more, much of the evidence that the AVMA intends to exclude is not "new" at all and instead merely clarifies facts in the record that the AVMA COE consistently ignored.

102.   By prohibiting Tuskegee from offering such evidence or testimony, the AVMA violates Tuskegee's due process rights.

Departure #3: The AVMA has refused to disclose evidence relevant to the process and procedure leading to its accreditation determination.

103.   Tuskegee has requested that the AVMA COE produce certain documents and make available witnesses for pre-hearing depositions related to the process and procedure relied upon by the AVMA COE to render its adverse accreditation decision.

104.   According to the AVMA COE, the information that Tuskegee seeks does exist but is being withheld as "confidential, *inter alia*." Exhibit 4 at 5.

105.   The AVMA has accepted this position of its internal accrediting arm, the AVMA COE – the very entity adverse to Tuskegee.

106.    Additionally, the AVMA has posited that all information before the AVMA COE at the time of its decision has been produced. Once again, this position fundamentally ignores the Policies' plain language that documentation and testimony relevant to the AVMA COE's "process and procedure used to arrive at its decision" is also admissible at the appeals hearing. AVMA COE, *Policies* § 2.5.4.

107.    The AVMA COE has no right to confidentiality protections like the deliberative-process privilege that properly belong only to governmental bodies.

108.    Further, it is entirely arbitrary for the AVMA's "neutral" appellate panel to vote against the AVMA COE turning over materials that are clearly relevant under the plain language of the Policies.

109.    The AVMA COE's withholding of that information under the pretense of "confidentiality," and the AVMA's acceptance of such withholding under a plainly erroneous reading of the Policies, deprives Tuskegee of a full and fair hearing, which, in turn, deprives Tuskegee of due process.

Departure #4: The AVMA deprives Tuskegee of a full and fair opportunity to be heard.

110.    The Policies grant Tuskegee "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4.

111.    The Policies contain no limitation on the number or length of presentation of live witnesses, nor do the Policies limit evidentiary submissions.

112.    Contrary to the Policies, the AVMA has informed Tuskegee that it will not allow any "extensive fact witness testimony" and it will prohibit all "expert testimony." Exhibit 8 at 6.

113.    The AVMA also stated to Tuskegee that its entire presentation, including its reply to the AVMA COE, will be limited to two-and-a-half hours.

114.    And, because the AVMA appeals panel's questioning takes away from the allotment of two hours, it is substantially likely that panel questions will dominate the hearing and further deprive Tuskegee of the fair hearing it deserves.

115.    That arbitrary limitation is unconscionable given that this matter has spanned over four years.

116.    Tuskegee estimates that it would take four or five full days to present the evidence and testimony necessary to explain why the AVMA COE's decision was flawed.

117.    It is absurd for the AVMA to decide in two hours whether to affirm the terminal accreditation status of a storied, nearly-century-old veterinary program like Tuskegee.

118.    Tuskegee is instead entitled to present its entire case before the AVMA appeals panel without any arbitrary limitation placed on it that is not found in the Policies.

119. The AVMA's arbitrary two-hour limitation on Tuskegee's presentation deprives it of its right under the Policies to "present witnesses." AVMA COE, *Policies* § 2.5.4.

120. The AVMA's arbitrary limitation on Tuskegee's presentation deprives Tuskegee of a full and fair hearing.

121. The AVMA's departure from its Policies violates Tuskegee's right to due process.

<u>**CAUSE OF ACTION**</u>

**COUNT I**
**Violation of Due Process – Federal Common Law**

122. Tuskegee incorporates by reference the allegations of Paragraphs 1 through 121 above.

123. "'[Q]uasi-public' professional organizations and accrediting agencies . . . have a common law duty to employ fair procedures when making decisions affecting their members." *Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 711 (6th Cir. 2006).

124. "The fundamental components of due process are 'notice and an opportunity to respond.'" *Bennett Coll.*, 474 F. Supp. 3d at 1307 (quoting *Auburn Univ.*, 489 F. Supp. 2d at 1373–74).

125.   Further, common law due process requires "an open, fair and deliberative process . . . to protect all interests and to assure some measure of confidence in the outcome of the inquiry." *Auburn Univ.*, 489 F. Supp. 2d at 1374.

126.   No process, however, can be said to be "open, fair and deliberative" if an accreditation agency refuses to follow its own policies and procedures that govern the process. *Id.*

127.   Thus, "[i]t is axiomatic that an accrediting agency's failure to follow its own rules constitutes a violation of due process." *Bennett Coll.*, 474 F. Supp. 3d at 1307.

128.   The AVMA has violated Tuskegee's right to due process by arbitrarily limiting the scope of appeal more narrowly than the Policies allow.

129.   The AVMA has departed from the Policies in numerous respects, including by:

a.   Prohibiting evidence and testimony regarding the AVMA COE's disparate treatment of Tuskegee;

b.   Prohibiting the introduction of any evidence relating to the process and procedure by which the AVMA COE reached the decision to place Tuskegee on terminal accreditation status;

c.      Failing to disclose relevant materials regarding the process and procedure by which the AVMA COE reached the decision to place Tuskegee on terminal accreditation status; and

d.      Depriving Tuskegee of a full and fair opportunity to be heard.

130.    As a result, the AVMA's appeal procedures deny due process to Tuskegee.

131.    The activities of the AVMA and its AVMA COE as alleged herein are continuing.

132.    Alabama's elected leaders have voiced their concern regarding the AVMA's due process violations against Tuskegee and have taken action in attempt to put a stop to them. A bipartisan cohort of Alabama's congressional delegation recently wrote a letter to Secretary of Education Linda McMahon, raising "serious concerns" that the AVMA's deviations from its Policies have undermined "the principles of due process and create[d] an uneven playing field for an institution that has served the veterinary profession for more than 80 years." Exhibit 10 at 2.

133.    Similarly, the Governor of Alabama wrote a letter to Secretary McMahon asking her to "[e]ncourag[e] the [AVMA] to provide a fair and thorough review process that allows Tuskegee to fully present its case." Exhibit 11 at 2.

134.    If the AVMA appeals panel affirms the AVMA COE's decision to place Tuskegee on terminal accreditation status without affording Tuskegee due process,

and the effective date of that terminal accreditation status occurs, it will cause irreparable harm to Tuskegee, including but not limited to:

      a.      Significant reputational injury to Tuskegee and its alumni;

      b.      Significant harm to Tuskegee's ability to recruit prospective students because, in addition to Tuskegee's reputational injury, new students would not be eligible for federal aid;

      c.      Significant harm to recruitment efforts for faculty and staff;

      d.      Imposition of an obligation to formulate a "teach out" plan for existing students, and a prohibition on accepting new students under any accreditation status;

      e.      Significant harm to faculty and staff retention;

      f.      Significant harm to existing student retention;

      g.      Significant harm to research grant funding;

      h.      Significant harm to alumni giving and support;

      i.      Significant harm to the provision of veterinary services in Alabama to protect animal and human health; and

      j.      Potential for college closure following completion of the "teach out" plan for existing students.

135.    Injunctive relief is required to prevent the harm alleged and because monetary damages will be inadequate to compensate Tuskegee for the irreparable harm it will suffer absent such relief.

## RELIEF SOUGHT

136.    Plaintiff Tuskegee University demands judgment against the AVMA and seeks the following relief:

a.    Enjoining the AVMA from violating Tuskegee's due process rights in Tuskegee's appeal of the AVMA COE's adverse accreditation decision;

b.    Entry of an order requiring the AVMA to allow Tuskegee to introduce evidence regarding the AVMA COE's disparate treatment of Tuskegee in Tuskegee's appeal of the AVMA COE's adverse accreditation decision;

c.    Entry of an order requiring the AVMA to allow Tuskegee to introduce evidence in Tuskegee's appeal of the AVMA COE's adverse accreditation decision relating to the process and procedure by which the AVMA COE reached its decision;

d.    Entry of an order requiring the AVMA to afford Tuskegee a full and fair opportunity to be heard in its appeal of the AVMA COE's adverse accreditation decision;

e.      Entry of an order allowing Tuskegee to conduct discovery regarding the process and procedure by which the AVMA COE reached the decision to place Tuskegee on terminal accreditation status;

f.      Entry of an order awarding Tuskegee its costs of suit, including its reasonable attorneys' fees; and

g.      Entry of an order awarding Tuskegee all other legal and equitable relief to which it may be entitled.

137.   Tuskegee demands a jury on all issues so triable.

Respectfully submitted this 10th day of November, 2025.

*/s/ James C. Lester*

Thomas W. Thagard III (ASB-2000-D62T)
James C. Lester (ASB-4477-M68L)
S. Reeves Jordan (ASB-7876-P38Y)
William B. Grimes (ASB-1696-T98H)
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
tthagard@maynardnexsen.com
jlester@maynardnexsen.com
rejordan@maynardnexsen.com
bgrimes@maynardnexsen.com

H. William Bloom III (ASB-0000-Q20N)
MAYNARD NEXSEN PC
770 Washington Avenue
RSA Plaza, Suite 421

Montgomery, AL 36104
T: (334) 262-2001
wbloom@maynardnexsen.com

*Counsel for Plaintiff Tuskegee University*