# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

TUSKEGEE UNIVERSITY,

     Plaintiff,

v.

AMERICAN VETERINARY
MEDICAL ASSOCIATION,

     Defendant.

Case No.: 3:25-cv-00890-RAH-KFP

**JURY TRIAL DEMANDED**

## TIME-SENSITIVE MOTION FOR PRELIMINARY INJUNCTION
## RULING REQUESTED BY DECEMBER 4, 2025

Thomas W. Thagard III
James C. Lester
S. Reeves Jordan
William B. Grimes
MAYNARD NEXSEN PC
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
tthagard@maynardnexsen.com
jlester@maynardnexsen.com
rejordan@maynardnexsen.com
bgrimes@maynardnexsen.com

H. William Bloom III
MAYNARD NEXSEN PC
770 Washington Avenue
RSA Plaza, Suite 421
Montgomery, AL 36104
T: (334) 262-2001
wbloom@maynardnexsen.com

*Counsel for Plaintiff Tuskegee University*

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Tuskegee University ("Tuskegee") respectfully requests that this Court preliminarily enjoin the American Veterinary Medical Association ("AVMA") from conducting an appellate proceeding that deprives Tuskegee of due process.

## **INTRODUCTION**

This case is about an accrediting agency's failure to follow its own policies and procedures, thereby depriving one of its member colleges of a full and fair hearing. This Court should maintain the status quo and enjoin the AVMA from violating Tuskegee's due process rights.

Recently, the accreditation arm of the AVMA, the AVMA Council on Education ("AVMA COE"), erroneously assigned terminal accreditation status to Tuskegee for an alleged lack of compliance with three of its eleven Accreditation Standards ("Standards"). That status has yet to take effect, but it almost certainly will following an AVMA appellate façade scheduled for December 5, 2025.

In recent communications between Tuskegee and the AVMA, the AVMA has made it crystal clear that it is determined to flout its own policies and procedures ("Policies") in Tuskegee's appeal. The Policies are attached as Exhibit 1 to Tuskegee's Complaint ("Compl."). The Policies grant Tuskegee the right to present witnesses and submit documents pertinent to its case. Further, the Policies give Tuskegee the right to present evidence on appeal relevant to the AVMA COE's

process and procedure used to reach its accreditation decision. There are at least four ways in which the AVMA has breached the plain language of those Policies, although discovery would likely uncover more.

*First*, the AVMA will not allow Tuskegee to present evidence of the AVMA COE's disparate treatment as compared to other colleges of veterinary medicine. *Second*, the AVMA will not allow Tuskegee to present evidence that the AVMA COE disregarded its own accreditation criteria and failed to consider Tuskegee's evidence supporting accreditation. *Third*, the AVMA and AVMA COE refuse to disclose all relevant evidence related to the process and procedure utilized by the AVMA COE to place Tuskegee on terminal accreditation. *Fourth*, the AVMA has imposed a capriciously short time limitation on Tuskegee's appellate presentation, ensuring that Tuskegee cannot present the bulk of its evidence on appeal.

"It is axiomatic that an accrediting agency's failure to follow its own rules constitutes a violation of due process." *Bennett Coll. v. S. Ass'n of Colls. & Sch. Comm'n on Colls., Inc.*, 474 F. Supp. 3d 1297, 1307 (N.D. Ga. 2020). Thus, *each* of the AVMA's violations of its Policies deprives Tuskegee of its due process rights. Accordingly, Tuskegee is substantially likely to succeed on the merits of its case. And the equities could not be more in favor of Tuskegee, a historic veterinary college on the brink of unwarranted ruin, and against the AVMA, an accreditation agency that treats its own Policies as mere suggestions. Tuskegee needs an injunction from

this Court to maintain the status quo and prevent the AVMA from inflicting irreparable harm on one of America's most storied universities.

## FACTUAL BACKGROUND

Tuskegee is a historic veterinary program that serves a vital, unique mission. Tuskegee has a distinguished eighty-year record as the only historically Black college of veterinary medicine. *See* Tuskegee University College of Veterinary Medicine, *The Historical Legacy*, https://www.tuskegee.edu/vetmed (last visited Nov. 5, 2025). Tuskegee's College of Veterinary Medicine was founded by Dr. Frederick Douglass Patterson in 1945, during the segregation era. *Id.* Today, veterinary medicine remains one of the least diverse fields of practice. There are about 127,000 veterinarians in the United States, but only 2% of that number are Black. *Id.* Of that 2%, 70% are Tuskegee graduates. *Id.* Thus, the AVMA, a trade association, and the AVMA COE, the sole accreditor of veterinary schools in the United States, will soon decide, in large part, whether minority participation in the field of veterinary medicine will enjoy continued success.

Recently, the AVMA COE made the gravely erroneous decision to place Tuskegee on terminal accreditation status for an alleged lack of compliance with certain aspects of the Standards. The AVMA is set to rubberstamp that decision on December 5, 2025, and make Tuskegee's terminal accreditation status effective. But the AVMA's hostile procedural actions in defining the scope of Tuskegee's appeal

3

have consistently violated the Policies, which in turn violate Tuskegee's due process rights.

I. **The AVMA COE treated Tuskegee in a biased and unfair manner, and the AVMA refuses to consider evidence of that mistreatment in contravention of the Policies.**

The AVMA COE's actions have reeked of bias and disparate treatment against Tuskegee as compared to its treatment of other colleges, and the AVMA appeals panel refuses to consider any evidence of that disparate treatment. Those actions are contrary to the Policies.

Under the Policies, the AVMA COE must apply its Standards "consistently and fairly to all colleges seeking accreditation." AVMA COE, *Policies* § 1.6.1. Tuskegee has evidence that the AVMA COE violated this section of its Policies in its placement of Tuskegee on terminal accreditation status.

For example, the AVMA COE placed Tuskegee on terminal accreditation for its purported lack of sufficient funding to replace or refurbish older clinical facilities. Conversely, Dr. Willie Reed[1] intends to testify that, during his tenure as Dean of

---

[1] Dr. Reed holds a Doctor of Veterinary Medicine degree from Tuskegee University, and a Doctor of Philosophy degree from Purdue University. Exhibit 2 ¶ 4. Dr. Reed served as Dean of Purdue University College of Veterinary Medicine from 2007 to 2024. *Id.* Before his sixteen-year deanship, Dr. Reed served as the Acting Chair (1997–2001) and Chair (2001–2006) of Michigan State University's Department of Pathobiology and Diagnostic Investigation. *Id.* Between 1990 and 2006, Dr. Reed was the Director of the Animal Health Diagnostic Laboratory at Michigan State, which is one of the largest and most comprehensive diagnostic laboratories in the country. *Id.*

Purdue University College of Veterinary Medicine, that college was placed on probationary accreditation due to the need to replace its old and outdated hospital. Exhibit 2 ¶ 8(a). When Purdue contended that it had the financial ability to fund its $108 million dollar project, the AVMA COE took its word at face value, and Purdue simply moved forward with construction and obtained an extension to its probationary status to complete the project. *See id.* ¶ 8(b). On the other hand, when Tuskegee provided written assurance of an unrestricted financial commitment from the University, the Chair of the University's Board of Trustees, the University's President, and a major financial institution, as well as design plans from the same architecture firm that Purdue used, the AVMA COE either ignored or distrusted those commitments and plans. *See id.* ¶ 8(b)–(c).

Similarly, Dr. James Lloyd[2]—an expert in the field of veterinary-medicine education—intends to testify that the AVMA COE has treated Tuskegee "differently"

---

[2] Dr. Lloyd has spent his entire thirty-seven-year career "in veterinary medicine, economics, and animal health management." Exhibit 3 ¶ 4. Dr. Lloyd obtained a Doctor of Veterinary Medicine degree and a Doctor of Philosophy degree from Michigan State University. *Id.* ¶ 13. Dr. Lloyd previously served as the Dean of the University of Florida College of Veterinary Medicine (2013–2019) and Associate Dean at Michigan State University College of Veterinary Medicine (2007–2013). *Id.* ¶¶ 5, 7. Dr. Lloyd has also authored or co-authored over 200 scholarly publications and delivered nearly 400 scholarly presentations and workshops—a significant portion of which have been "devoted to issues at the intersection of economics and veterinary medical education/practice." *Id.* ¶ 14.

and "[d]isparate[ly]" than all other colleges of veterinary medicine he has been associated with in his thirty-seven-year career. Exhibit 3 ¶¶ 4, 65, 71, 83.

The AVMA COE's actions as illustrated by Dr. Reed and Dr. Lloyd evidence inconsistent and unfair treatment in contravention of section 1.6.1 of the Policies. And under section 2.5.4 of the Policies, Tuskegee has the right to appeal an adverse decision from the AVMA COE on the grounds that the AVMA COE "1) ruled erroneously by disregarding established AVMA COE criteria for accreditation, 2) materially failed to follow its stated procedures, or 3) failed to consider all the evidence and documentation presented." AVMA COE, *Policies* § 2.5.4. Tuskegee thus desires to submit the evidence described above to the AVMA appeals panel to show that the AVMA COE "materially failed to follow its stated procedures" regarding its commitment to treat colleges "consistently and fairly." *Id.* §§ 2.5.4 & 1.6.1.

On September 12, 2025, Tuskegee appealed the AVMA COE's decision to place it on terminal accreditation status as allowed by the Policies. Following Tuskegee's initial submission of its appellate materials, which included similar statements from Dr. Reed and Dr. Lloyd, counsel for the AVMA and Tuskegee exchanged various letters regarding the procedures that would govern Tuskegee's appeal. *See* Compl. ¶¶ 73–81. On October 20, 2025, the AVMA ultimately concluded

that Tuskegee is categorically barred from presenting the testimony of Dr. Reed and Dr. Lloyd at the December 5, 2025 appeals hearing. Exhibit 1-G at 6.

As grounds for its decision, the AVMA stated that Tuskegee may not offer this testimony because it "was not evidence before the [AVMA COE] at the time of its decision." *Id.* (citation modified). The AVMA's decision, however, conflicts with section 2.5.4 of the Policies. That section provides that an appeals hearing "shall be restricted to (1) the adverse accreditation or reasonable assurance decision, (2) *a review of information before the Council at the time of the decision*, (3) **a review of the process and procedure used to arrive at the decision**, **and** (4) **testimony relevant to (1), (2) and/or (3)**, depending on the basis of the appeal." AVMA COE, *Policies* § 2.5.4 (emphasis added). The testimony Tuskegee wishes to offer on appeal is "relevant to" "a review of the process and procedure [the AVMA COE] used to arrive at the decision." *Id.* Yet, the AVMA ignored subsections (3) and (4) of section 2.5.4, and instead barred this testimony pursuant to subsection (2) of section 2.5.4. It is unquestionably relevant to the outcome of an accreditation proceeding that the accreditation agency exhibited biased and disparate treatment toward the college that it later placed on terminal accreditation status. Because the AVMA has prohibited Tuskegee from offering such evidence on appeal, the AVMA has violated its own Policies.

II.    **The AVMA COE disregarded its own criteria for accreditation and failed to consider all of Tuskegee's evidence, but the AVMA refuses to consider evidence of those errors in contravention of the Policies.**

In placing Tuskegee on terminal accreditation status, the AVMA COE disregarded its own criteria for accreditation and failed to consider all of Tuskegee's evidence in support of accreditation. Tuskegee has evidence of those errors, and desires to present that evidence on appeal. But the AVMA also refuses to consider such evidence. That decision is contrary to the Policies.

Tuskegee has evidence that the AVMA COE disregarded its criteria for accreditation and failed to consider all of Tuskegee's evidence supporting accreditation. *See* AVMA COE, *Policies* § 2.5.4 (providing three grounds for appeal—the AVMA COE "1) ruled erroneously by disregarding established AVMA COE criteria for accreditation, 2) materially failed to follow its stated procedures, or 3) failed to consider all the evidence and documentation presented.").

For example, the AVMA COE concluded that Tuskegee was deficient with respect to Standard 2—Finances. But Dr. Lloyd testified that, based on his "comprehensive review of [Tuskegee's] financial soundness[,]" "the [AVMA] COE disregarded substantial evidence establishing that [Tuskegee] has sufficient funding and adequate resources to confidently operate as a [college of veterinary medicine]." Exhibit 3 ¶¶ 66–69. Further, Dr. Lloyd testified that "[t]here is no basis for the lingering major deficiency related to Standard 2, and the [AVMA] COE's finding to

8

the contrary erroneously disregarded established criteria for accreditation as well as the [AVMA] COE's own standards of accreditation." *Id.* ¶ 70.

Tuskegee desires to present Dr. Lloyd's testimony on appeal to support its contention that the AVMA COE disregarded its own accreditation criteria and failed to properly consider Tuskegee's evidence in support of accreditation. But the AVMA has barred Tuskegee from offering this testimony by Dr. Lloyd as well. Similar to Tuskegee's evidence of disparate treatment, the AVMA will not allow Tuskegee to present "expert testimony" because that testimony "was not evidence before the [AVMA COE] at the time of its decision." Exhibit 1-G at 6 (citation modified). Nor will the AVMA allow Tuskegee to present *any other* documentation that was not before the AVMA COE when it placed Tuskegee on terminal accreditation status. *Id.*

The AVMA's decision in this regard violates section 2.5.4 of the Policies twice over. *First*, the Policies grant colleges "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4. Here, the AVMA is prohibiting Tuskegee from "present[ing] [a] witness[] . . . pertinent to the case," which contravenes the Policies. *Id. Second*, the Policies allow Tuskegee to present evidence that is "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." *Id.* Simply put, although the Policies *allow* Tuskegee to present evidence of "information before the [AVMA COE] at the time of the decision," they do not

*solely limit* Tuskegee to presenting that kind of evidence. *Id.*; *see also supra* at 7. Because the Policies allow Tuskegee to offer evidence "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision," and the AVMA will not allow Tuskegee to offer that evidence, the AVMA is violating its own Policies. AVMA COE, *Policies* § 2.5.4.

III.    **The AVMA COE admitted it possesses relevant documents related to the process and procedure it used to reach its accreditation decision, but the AVMA refuses to disclose that information to Tuskegee.**

The AVMA COE admitted to Tuskegee that it possesses relevant documents about the process and procedure that it used to reach its accreditation decision. Tuskegee desires to review and present that evidence, but the AVMA COE and the AVMA have stonewalled Tuskegee's efforts to do so, in contravention of the Policies.

After Tuskegee submitted its appellate submission to the AVMA, Tuskegee requested information from the AVMA COE "related to" the "process and procedure" used by the AVMA COE to arrive at its terminal accreditation decision. *Id.* The AVMA COE responded by confirming that it had the relevant information, but it refused to disclose that information to Tuskegee. *See* Exhibit 1-C at 5. The AVMA COE's purported justification for its refusal was that the information Tuskegee sought was "confidential, *inter alia.*" *Id.* The AVMA later adopted the AVMA COE's position, explaining that Tuskegee would be prohibited from offering evidence "produced during pre-hearing discovery" because it would "not qualify as the

evidence before the [AVMA COE] at the time of its decision." Exhibit 1-G at 5 (citation modified).

Once again, the AVMA's limitation of Tuskegee's case on appeal violates section 2.5.4 of the Policies. *See* AVMA COE, *Policies* § 2.5.4. To be sure, the Policies *permit* Tuskegee to offer evidence of "information before the [AVMA COE] at the time of the decision." *Id.* But the Policies *also permit* Tuskegee to offer evidence "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." *Id.* The AVMA's refusal to disclose information about the AVMA COE's process and procedure and its refusal to allow Tuskegee to present that evidence on appeal, especially in the light of its disparate treatment of Tuskegee, violates the Policies.

## IV.  <u>The AVMA is limiting the testimony and witnesses that Tuskegee may offer on appeal, but the Policies contain no such limitations.</u>

Moreover, the AVMA has effectively imposed an arbitrary limitation on the number of witnesses that Tuskegee may present on appeal. Such a limitation contradicts the Policies.

This accreditation matter has spanned over four years. Tuskegee informed the AVMA that it estimated that it would take about four or five days to present the evidence and testimony necessary to establish its case. *See* Exhibit 1-B at 1–2. In response, the AVMA informed Tuskegee that it will not allow "extensive" testimony

and will limit Tuskegee's entire presentation—including its rebuttal—to two-and-a-half hours. Exhibit 1-G at 6.

The AVMA's decision contradicts the plain language of section 2.5.4 of the Policies. That section grants colleges "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4. The only limitation that the Policies impose on colleges is that all of the testimony it presents must be "pertinent to the case." *Id.* Tuskegee's evidence is pertinent. The Policies impose *no* limitation on the length of a college's presentation, or the number of pertinent witnesses or documents a college may introduce. *See id.* The AVMA's arbitrary decision to limit Tuskegee's presentation and to prevent it from presenting the bulk of its evidence violates section 2.5.4 of the Policies.

## STANDARD OF REVIEW

To obtain a preliminary injunction, Tuskegee must establish: (1) a substantial likelihood of success on the merits; (2) irreparable injury unless the injunction issues; (3) the threatened injury to Tuskegee outweighs any damage the proposed injunction may cause to the AVMA; and (4) if the Court issues the injunction, it would not be adverse to the public interest. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). "The district court has substantial discretion in weighing the four relevant factors to determine whether preliminary injunctive relief

is warranted." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.13 (11th Cir. 2020) (citation modified).

## ARGUMENT

### I.    Tuskegee is substantially likely to succeed on the merits of its due process claim.

The facts above establish that Tuskegee is substantially likely to succeed on the merits of its federal common law due process claim. *See also* Compl. ¶¶ 123–34. "This factor is generally the most important of the four factors." *Gonzalez*, 978 F.3d at 1271 n.12 (citation modified). Further, "[a] substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* (citation modified).

Although there is some disagreement around the edges of what constitutes a federal common law due process claim in the accreditation context, all agree that "[i]t is axiomatic that an accrediting agency's failure to follow its own rules constitutes a violation of due process." *Bennett Coll.*, 474 F. Supp. 3d at 1307. Here, the facts prove that the AVMA has denied Tuskegee its right to due process by violating its own Policies over and over again.

*First*, the AVMA refuses to allow Tuskegee to introduce evidence of disparate treatment by the AVMA COE. Tuskegee would offer testimony from two witnesses explaining how the AVMA COE treated Tuskegee differently from any other veterinary college they have been associated with in their lengthy and illustrious

13

careers. Their testimony—that the AVMA COE violated section 1.6.1 of the Policies—supports a valid ground for appeal under section 2.5.4 of the Policies. *See* AVMA COE, *Policies* § 2.5.4 (providing that a college may appeal on the grounds that the AVMA COE "materially failed to follow its stated procedures").

The AVMA, however, will not allow Tuskegee to present this evidence. That rejection violates section 2.5.4 of the Policies, which allows colleges "[a]t any hearing, . . . the right to present witnesses and to submit documents and other written materials pertinent to the case." *Id*. That rejection also violates another part of section 2.5.4 of the Policies, which allows Tuskegee to present evidence that is "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." *Id.* Because the AVMA is violating its own Policies, it necessarily is violating Tuskegee's right to due process. *See Bennett Coll.*, 474 F. Supp. 3d at 1307.

*Second*, the AVMA has rejected Tuskegee's attempt to present evidence that the AVMA disregarded its own criteria for accreditation and failed to consider Tuskegee's evidence supporting accreditation. Tuskegee would offer testimony that the AVMA COE committed those errors, which are valid grounds for appeal under Section 2.5.4 of the Policies. *See* AVMA COE, *Policies* § 2.5.4. The AVMA, however, refuses to let Tuskegee present that evidence for two reasons—each of which violates the Policies. The AVMA has made the arbitrary decision to prohibit expert testimony at the hearing even though the Policies allow colleges an

unqualified "right to present witnesses and to submit documents and other written materials pertinent to the case." *Id.* And, the AVMA stated that the evidence Tuskegee desires to present "was not evidence before the [AVMA COE] at the time of its decision." Exhibit 1-G at 6 (citation modified). But the Policies allow Tuskegee to present evidence that is "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." AVMA COE, *Policies* § 2.5.4. Each of the AVMA's stated justifications violates the Policies, and, in turn, violates Tuskegee's due process rights. *See Bennett Coll.*, 474 F. Supp. 3d at 1307.

*Third*, the AVMA refuses to produce documents "relevant to" the "process and procedure" the AVMA COE used to arrive at its terminal accreditation decision. AVMA COE, *Policies* § 2.5.4. The AVMA COE brazenly told Tuskegee that information was "confidential, *inter alia*." Exhibit 1-C at 5. The AVMA agreed and told Tuskegee that it could not offer such evidence anyway, as that evidence would "not qualify as the evidence before the [AVMA COE] at the time of its decision." Exhibit 1-G at 5 (citation modified). Once again, the Policies allow Tuskegee to offer evidence "relevant to" "the process and procedure [the AVMA COE] used to arrive at the [accreditation] decision." AVMA COE, *Policies* § 2.5.4. The AVMA's refusal to disclose evidence relevant to the process and procedure the AVMA COE used to arrive at its accreditation decision violates the Policies, and in turn violates Tuskegee's right to due process. *See Bennett Coll.*, 474 F. Supp. 3d at 1307; *see also*

*Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.*, 489 F. Supp. 2d 1362, 1376 (N.D. Ga. 2002) (permitting college to conduct discovery in due process challenge).

*Fourth*, the AVMA's arbitrary and capricious limitation of Tuskegee's presentation on appeal violates its Policies. After Tuskegee requested to present all "pertinent" evidence on appeal, as allowed under the Policies, the AVMA balked and stated it would not allow "extensive" testimony and would limit Tuskegee's case to a total of two-and-a-half hours. Exhibit 1-G at 6. The AVMA's limitation of Tuskegee's case violates section 2.5.4 of its Policies, which grants Tuskegee "the right to present witnesses and to submit documents and other written materials pertinent to the case." AVMA COE, *Policies* § 2.5.4. The Policies impose no limitation on the time of a college's case or the number of "pertinent" witnesses a college may tender. The AVMA's decision to impose a limitation contrary to its Policies violates Tuskegee's due process rights.

## II.    <u>Unless this Court issues an injunction, Tuskegee will suffer irreparable harm</u>.

Tuskegee will suffer irreparable injury if this Court does not issue a preliminary injunction. The institutional, reputational harm that the AVMA is set to inflict on Tuskegee is not one that can "be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). If Tuskegee's terminal accreditation status becomes effective, the irreparable harm Tuskegee would suffer would include:

- Significant reputational injury to Tuskegee and its alumni;

- Significant harm to Tuskegee's ability to recruit prospective students because, in addition to Tuskegee's reputational injury, new students would not be eligible for federal aid;

- Significant harm to recruitment efforts for faculty and staff;

- Imposition of an obligation to formulate a "teach out" plan for existing students, and inability to accept new students under any accreditation status;

- Significant harm to faculty and staff retention;

- Significant harm to existing student retention;

- Significant harm to research grant funding;

- Significant harm to alumni giving and support;

- Significant harm to the provision of veterinary services in Alabama to protect animal and human health; and

- Potential for college closure following completion of the "teach out" plan for existing students.

Exhibit 4 ¶ 13.

It is not an overstatement to say that the terminal accreditation of Tuskegee could result in the ruin of the program—a harm far too great for any monetary award to remedy. *See St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, No. 1:07-cv-00640, 2007 WL 4219402, at *3 (M.D.N.C. Nov. 29, 2007) (finding that similar factors constituted irreparable harm in the preliminary injunction context).

III.    **The threatened injury to Tuskegee outweighs the harm of an injunction to the AVMA.**

Likewise, the catastrophic injury that terminal accreditation status presents to Tuskegee far outweighs the harm (if any) that a preliminary injunction would pose to the AVMA. Tuskegee seeks to preserve the status quo of its accreditation status while it presents its appeal from the AVMA COE's determination, a "textbook definition of a preliminary injunction." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004). The AVMA may argue that an injunction would harm its credibility among the AVMA COE's member institutions, *i.e.*, other colleges of veterinary medicine, and harm its ability to enforce its own decisions. *See St. Andrews Presbyterian Coll.*, 2007 WL 4219402, at *3. But the other colleges of veterinary medicine whose accreditation status is also governed by the AVMA COE—which may in the future be the subjects of adverse accreditation actions—will benefit from the AVMA's compliance with due process protections. And the AVMA still retains the ability to enforce its own decisions so long as its procedures comply with due process. Indeed, it is likely that the only "harm" that will befall the AVMA if this Court enters the preliminary injunction is that it will be required to provide Tuskegee the more fulsome procedural rights required by the AVMA's own Policies. The equities are squarely in Tuskegee's favor.

**IV.    A preliminary injunction is in the public interest.**

Finally, a preliminary injunction in favor of Tuskegee is not adverse to the public interest. The public has a "fundamental" interest in courts upholding the right to due process. *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971). That is precisely the relief Tuskegee seeks from this Court. And, to be clear, Tuskegee is not challenging the AVMA's power as an accreditation agency to ensure that schools of veterinary medicine comply with the Standards. Tuskegee merely seeks to ensure that the AVMA applies those Standards fairly and according to its stated Policies. That request is not offensive to the public interest. *See St. Andrews Presbyterian Coll.*, 2007 WL 4219402, at *3.

Moreover, the public interest in this case has been made clear by the people of Alabama through leaders they have elected. *See White v. Alabama*, 74 F.3d 1058, 1070 (11th Cir. 1996) ("The will of the people is expressed through elections . . . ."). A bipartisan cohort of Alabama's congressional delegation recently wrote a letter to Secretary Linda McMahon, urging her to, among other things, "[e]ncourage the [AVMA] to provide a fair and thorough review process that allows Tuskegee to present its case fully." Exhibit 5 at 2. The Governor of Alabama made similar requests to the Secretary. Exhibit 6 at 2. Accordingly, granting a preliminary injunction is consistent with the public interest.

## **<u>REQUESTED RELIEF</u>**

Tuskegee respectfully requests that this Court preliminarily enjoin the AVMA from holding the December 5, 2025 hearing as to Tuskegee's terminal accreditation status until the Court can finally adjudicate whether the AVMA's process and procedure for this appeal violates due process.

Respectfully submitted this 10th day of November, 2025.

Respectfully submitted,

/s/ James C. Lester
Thomas W. Thagard III (ASB-2000-D62T)
James C. Lester (ASB-4477-M68L)
S. Reeves Jordan (ASB-7876-P38Y)
William B. Grimes (ASB-1696-T98H)
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
tthagard@maynardnexsen.com
jlester@maynardnexsen.com
rejordan@maynardnexsen.com
bgrimes@maynardnexsen.com

H. William Bloom III (ASB-0000-Q20N)
MAYNARD NEXSEN PC
770 Washington Avenue
RSA Plaza, Suite 421
Montgomery, AL 36104
T: (334) 262-2001
wbloom@maynardnexsen.com

*Counsel for Plaintiff Tuskegee University*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 10th day of November, 2025, I filed a true and correct copy of the foregoing document via the CM/ECF system. On the same date, a true and correct copy of the foregoing document was also sent via first-class, U.S. mail to the following:

> American Veterinary Medical Association
> c/o Dr. Janet D. Donlin
> 1931 North Meacham Road, Suite 100
> Schaumburg, IL 60173-4360

On the same date, a true and correct copy of the foregoing document was also sent via email to the following:

> Julia Judish
> Pillsbury Winthrop Shaw Pittman LLP
> 1200 Seventeenth Street, NW
> Washington, DC 20036
> julia.judish@pillsburylaw.com

> Jed R. Mandel
> Chicago Law Partners, LLC
> 333 W. Wacker Drive, Suite 810
> Chicago, IL 60606
> jmandel@clpchicago.com

> */s/ James C. Lester*
> OF COUNSEL